Guldane T. **BRADY**, Plaintiff,

v.

William J. **PERRY**, et al., Defendants.

CV–94–N–3074–NE.

United States District Court,
N.D. Alabama,
Northeastern Division.

Jan. 8, 1996.

Jay E. Emerson, Jr., Higgs & Emerson, Huntsville, AL, for plaintiff.

Caryl Privett, U.S. Atty., John C. Bell, Birmingham, AL, for defendants.

### Memorandum of Opinion

EDWIN L. NELSON, District Judge.

### I. Introduction

The plaintiff, Ms. Guldane T. Brady ("Ms. Brady"), brings this action under Title VII, 42 U.S.C. § 2000e, *et seq.* Specifically, she claims that the defendant discriminated against her because of her national origin and because she filed EEO complaints. This

action is presently before the court on defendant's motion for summary judgment filed October 31, 1995. Upon due consideration, defendant's motion for summary judgment will be granted.

## II. Statement of Facts

The Army and Air Force Exchange Service (AAFES) is a joint military command of the U.S. Army and the U.S. Air Force. It is a nonappropriated fund instrumentality of the United States Government performing governmental functions, and its purpose is to provide services and merchandise at a reasonable price to military members and to generate reasonable earnings for morale, welfare, and recreational activities. Although AAFES employees are federal employees, they are not civil service employees. Ms. Brady was an employee at AAFES' Redstone Arsenal Exchange Main Store from March 30, 1989, to December 30, 1993, as a permanent, part-time HPP–3 Sales Associate.

While an employee at the exchange, Ms. Brady filed five complaints of discrimination with the Equal Employment Opportunity Office. Her first one, filed in July 1993, alleges discrimination based on color, age, and reprisal for having participated in EEO activity. Her second one, filed in August 1993, alleges discrimination based on sex and reprisal for having participated in EEO activity. Her third one, filed in August 1993, appears to allege discrimination based on national origin, sex, and religion. Her fourth one, also filed in August 1993, appears to allege discrimination based on race, sex, national origin, and religion. On or about October 29, 1993, an EEO representative informed Ms. Brady that her first four EEO complaints were joined for investigation. In November 1993, Ms. Brady filed her fifth EEO complaint, which alleged discrimination based on reprisal for having participated in EEO activity. Her fifth complaint was not combined with the first four.

Pursuant to a February 25, 1994, request for a hearing, the first four complaints were forwarded to the EEOC where they were given EEOC Nos: 130–94–8121–X, 130–94–8122–X, 130–94–8123–X, 130–94–8124–X. Pursuant to a June 21, 1994, request for a hearing, the fifth complaint was forwarded to the EEOC where it was given EEOC No. 130–94–8239–X. On or about June 23, 1994, the first four complaints were remanded to AAFES for a Final Agency Decision, due to Ms. Brady's failure to comply with the scheduling order. On about September 26, 1994, AAFES issued a Final Agency Decision on the four complaints, finding no discrimination.

On October 26, 1994, a hearing was conducted regarding the fifth complaint before EEOC Administrative Judge Janice Volkman at which Ms. Brady was represented by an attorney. The defendant alleges that during the hearing, the Administrative Judge granted a recess to allow the parties an opportunity to negotiate a settlement. The defendant claims that the parties agreed to settle all five of the plaintiff's EEO complaints for $12,500, and that the settlement was read into the administrative record, accepted by the plaintiff and her attorney, and transcribed by the court reporter. The defendant also claims that pursuant to the settlement agreement, the defendant forwarded a $12,500 check to the plaintiff's attorney.

The plaintiff claims that she was suffering from cognitive problems, panic attacks, and difficulties in caring for herself the day of the administrative hearing. She claims that she did not have the requisite knowledge or intent to enter voluntarily into a settlement agreement that waived her Title VII claims.

## III. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of

a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Id.* at 322–23, 106 S.Ct. at 2552–53; *see* Fed.R.Civ.P. 56(a) and (b). There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. The nonmoving party need not present evidence in a form necessary for admission at trial, however he may not merely rest on his pleadings. *Id.* "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552.

After a properly made motion has been properly responded to, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine wether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2510. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury

or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2511–12; *see also Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 745 n. 11, 103 S.Ct. 2161, 2171 n. 11, 76 L.Ed.2d 277 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510 (citations omitted); *accord Spence v. Zimmerman,* 873 F.2d 256 (11th Cir.1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson,* 477 U.S. at 254, 106 S.Ct. at 2513; *Cottle v. Storer Communication, Inc.,* 849 F.2d 570, 575 (11th Cir.1989). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston,* 848 F.2d 1534, 1540 n. 12 (11th Cir.1988).

## IV. Discussion

The defendant argues that summary judgment is appropriate because the parties entered into a valid settlement agreement which constitutes a final resolution of the plaintiff's discrimination claims. *See United States Fire Insurance Co. v. Caulkins Indiantown Citrus Co.,* 931 F.2d 744, 748 (11th Cir.1991) (holding that "[t]he settlement of a dispute generally renders a case moot"). The Eleventh Circuit has held that a plaintiff who knowingly and voluntarily agreed to the terms of a settlement is bound by the terms of the agreement. *Freeman v. Motor Convoy,* 700 F.2d 1339, 1352 (11th Cir.1983), citing *Fulgence v. J. Ray McDermott & Co.,* 662 F.2d 1207, 1209 (5th Cir.1981). In the

present case, the plaintiff argues that the parties never finalized the terms of the settlement on October 26, 1994, the day of the administrative hearing. *Opponent's Amended Responsive Submission in Response to Exhibit D of the Court's Order*, at 3. She also argues that she was incapable of knowingly and voluntarily entering into a settlement on the day of the hearing. *Id.*

First, the plaintiff argues that a statement by the Administrative Judge during the hearing "indicates that the parties wished to enter into a settlement, and that the Judge would give the parties ten days to finalize their agreement and reduce it to writing and sign it to express their mutual consent." *Id.* As evidence, the plaintiff introduces the following statement made by the Administrative Judge during the hearing:

> At the end of the reading the parties will verbally give their agreement *and the actual agreement will be typed and signed* and forwarded to the parties and to this administrative judge by Mr. Campagna [defense attorney] within ten days.

*Id.* (emphasis supplied by plaintiff). The plaintiff argues that the words "actual agreement ... will be forwarded ... within ten days" implies that the parties had not reached a *final* settlement agreement on the day of the hearing.

The plaintiff's inference, however, is not reasonable. *See Brown*, 848 F.2d at 1540 n. 12 (holding that the nonmovant need not be given the benefit of every inference but only of every reasonable inference). The plaintiff quotes the sentence out of context. She fails to provide the sentence from the record which immediately precedes the one she quotes. In the preceding sentence, the Administrative Judge stated, "I am going to read into the record as part of the record the agreement *which has been reached by the parties.*" *Movant's Initial Submission in Response to Exhibit "D" of the Court Order*, Exhibit J, at 2 (emphasis added). That sentence provides that the parties had reached a settlement, not that settlement negotiations were ongoing. In the paragraph preceding the sentence that the plaintiff quotes, the Administrative Judge explains that the settlement agreement had to be read into the record and orally agreed to because the hearing was held "at a hotel ... where [they

were] without the usual secretarial support available, that is [they had] no word processors. [They had] no typists." *Id.*

Immediately before asking for the plaintiff's oral acceptance of the settlement agreement's terms, the Administrative Judge stated, "This settlement agreement will take effect on October 26, 1994." *Id.* at 5. The hearing was held on October 26, 1994. Such a clear statement that the settlement agreement takes effect on the day of the hearing belies an interpretation that a settlement was still days away. After the Administrative Judge asked her if she accepted, the plaintiff answered, "I do accept." *Id. See Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir.1981) (holding that absent a factual basis rendering it invalid, an oral agreement to settle a Title VII claim is enforceable against a plaintiff). Given the express language of the settlement agreement's terms read into the record and the parties' oral acceptance, the defendant has shown that the parties entered into a settlement agreement on October 26, 1994, which waived the plaintiff's discrimination claims in the present case.

The plaintiff also argues that she did not have the proper knowledge, volition, or capacity on October 26, 1994, to enter into a settlement agreement. *Opponent's Amended Responsive Submission in Response to Exhibit D of the Court's Order*, at 4. *See Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 52 & n. 15, 94 S.Ct. 1011, 1021 & n. 15, 39 L.Ed.2d 147, 160 (1974) (holding that the court must determine whether the employee's consent to the settlement agreement was knowing and voluntary). The plaintiff claims that she suffered from health problems on the day of the administrative hearing which prevented her from knowingly entering into a settlement. For example, she alleges that at the administrative hearing she experienced a "panic attack consisting of ringing in the ears, dizziness, faintness, rapid heart rate and shortness of breath." *Opponent's Amended Responsive Submission in Response to Exhibit D of the Court's Order*, at 5. Other than her affidavit prepared over a year after the administrative proceeding, the only other evidence the plaintiff produces to

show such a panic attack took place on the day of the hearing is the record of the proceeding, and plaintiff's citation to the record shows nothing more than the Administrative Judge asking the plaintiff if she wanted to take a break.[1] *Opponent's Evidence Submitted in Response to Exhibit D of the Court's Order*, Exhibit 2, at 92–93.

As evidence of incapacity, the plaintiff also points to the conclusions reached by Dr. Sherlee Dervio Vargas, a clinical psychologist and licensed professional counselor who treated her. During the administrative hearing, Dr. Vargas testified that the plaintiff has a generalized anxiety disorder with a panic disorder. *Opponent's Evidence Submitted in Response to Exhibit D of the Court's Order*, Exhibit 2, at 150. Dr. Vargas also testified that the plaintiff had been prescribed anti-depressant medication in the past, *id.* at 134, 138–39, and that she had been suicidal, *id.* at 136. The plaintiff infers that "[t]he testimony of [her] psychotherapist, Dr. Vargas, was strong enough that Judge Volkman stopped the hearing immediately after hearing Dr. Vargas' testimony." *Opponent's Amended Responsive Submission in Response to Exhibit D of the Court's Order*, at 5.

Again, the plaintiff's inference is not reasonable. *See Brown*, 848 F.2d at 1540 n. 12 (holding that the nonmovant need not be given the benefit of every inference but only of every reasonable inference). The plaintiff commits the common fallacy of *post hoc, ergo propter hoc*—"After this, so because of this."

At the conclusion of Dr. Vargas' testimony, the Administrative Judge states that she would like to stop the hearing and go off the record, because in her words, "[w]e have a little bit of a quandary here." *Opponent's Evidence Submitted in Response to Exhibit D of the Court's Order*, Exhibit 2, at 151. The plaintiff assumes that because one event—the Administrative Judge's recess—follows another—Dr. Vargas' testimony—the first is the cause of the second. However, the record is totally silent as to why the Administrative Judge believed the participants were in a "quandary" and why she was compelled to discuss the case off the record.

The plaintiff also wishes the court to show that a person experiencing the plaintiff's psychological problems would have been incapable of possessing the. requisite knowledge or volition to accept a settlement offer. *Opponent's Amended Responsive Submission in Response to Exhibit D of the Court's Order*, at 5. However, she was able to testify during the hearing, and the Administrative Judge, who was present at the hearing and capable of assessing the situation, allowed her to agree orally to the settlement. Neither the plaintiff nor her attorney made an objection during the hearing that her condition precluded her from accepting a settlement agreement orally.[2] In an affidavit prepared more than a year after the October 26, 1994, administrative hearing, the plaintiff claims that her attorney withheld information from her during settlement negotiations and that he prompted her to accept.[3] *Opponent's*

---

1. The record provides:

    Q [plaintiff's attorney]: Okay. Did your psychiatric treatment help you resolve any of the anxiety or the stress that you were under?
    A [plaintiff]: My anxiety and stresses and condition got worse for the reason that the pressure they put on me and the accusation they made, and made me—then alienation and the faces. They—they didn't talk to me. They turn my co-workers against me. People suspected me so much in that place, everyone all the time. I couldn't go to the break room. I had to walk outside waiting for my time to go to them.
    ADMINISTRATIVE JUDGE VOLKMAN: Do you want to take a minute? Ms. Brady, do you need a minute?
    MR. RAHAMATI [plaintiff's attorney]: Ms. Brady, would you like to take a few minutes. Do you want to continue?
    MS. BRADY: I will continue.

*Opponent's Evidence Submitted in Response to Exhibit D of the Court's Order*, Exhibit 2, at 92–93.

2. At one point, the plaintiff argues that she was never provided an opportunity to make an objection or acceptance of any provision of the alleged agreement read into the record. *Opponent's Amended Responsive Submission in Response to Exhibit D of the Court's Order*, at 5. However, the record clearly shows the Administrative Judge asking the plaintiff if she wished to accept. *Movant's Initial Submission in Response to Exhibit "D" of the Court Order*, Exhibit J, at 2.

3. In an affidavit prepared on October 25, 1995, the attorney who represented the plaintiff during the October 24, 1994, administrative hearing testified that the plaintiff "knew what she was doing" when she accepted the $12,500 settlement offer.

*Amended Responsive Submission in Response to Exhibit D of the Court's Order,* at 6. However, apart from her bare allegations she offers no substantive evidence that her attorney's behavior prohibited her from knowingly and voluntarily entering into a settlement.

The plaintiff has failed to provide sufficient evidence that she lacked the capacity to enter into a valid settlement agreement. *See Anderson,* 477 U.S. at 254, 106 S.Ct. at 2513 (holding that at the summary judgment stage there must be sufficient evidence on which the jury could find for the plaintiff).

## V. Conclusion

The defendant's motion for summary judgment will be granted, and the plaintiff's claims will be dismissed with prejudice. A separate order will be entered.

### ORDER

In accord with the Memorandum of Opinion entered contemporaneously herewith, it is hereby **ORDERED, ADJUDGED,** and **DECREED:**

1. The defendants motion for summary judgment is **GRANTED.**

2. The plaintiff's claims brought pursuant to Title VII, 42 U.S.C. § 2000, *et seq.,* are **DISMISSED WITH PREJUDICE.**

